# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DR. KHUSHNOOD ALI BAZ,<br><br>*Plaintiff*,<br><br>v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY, et al.,<br><br>*Defendants*. | Civil Action No. 1:18-cv-01013 (CJN) |

## MEMORANDUM OPINION

Dr. Khushnood Ali Baz challenges the government's alleged placement of him on the No-Fly List. *See generally* Am. Compl., Dkt. 21. Defendants move to dismiss, arguing both that Baz lacks Article III standing and that his Amended Complaint fails to state a claim. *See generally* Defs.' Mem. in Supp. of Their Mot. to Dismiss Pl.'s Am. Compl., Dkt. 27 ("Mot."). The Court agrees that Baz lacks Article III standing and will grant Defendants' Motion.

## I. Background

Baz is a Pakistani citizen who resides in Peshawar, Pakistan. Am. Compl. ¶ 15. He alleges that, for forty years prior to the events relevant to this lawsuit, he traveled frequently to the United States, attending conferences, completing medical internships, and visiting friends and relatives without incident. *See id.* ¶¶ 54–67. But that ended in February 2016 when Baz was not permitted to board a flight from Toronto to Detroit (after he had flown to Toronto from Pakistan via Dubai). *See id.* ¶¶ 70–71.

Believing that he was on the No-Fly List,[1] Baz completed a Traveler Inquiry Form and submitted it, together with supporting documentation, to the Traveler Redress Inquiry Program ("DHS TRIP"), a redress program administered by the Department of Homeland Security (DHS) for individuals who think they have been incorrectly included on the No-Fly List. *See id.* ¶¶ 44–49, 74. DHS responded by providing Baz with a Redress Control Number[2] for him to use whenever he made travel reservations with flights into the United States, but DHS did not tell him whether he in fact was on the No-Fly List. *Id.* ¶ 75.

Baz planned another trip to the United States in 2017. *See id.* ¶ 79. Before leaving Pakistan, Baz advised DHS TRIP of his travel plans and provided it with his Redress Control Number. *Id.* ¶ 77. DHS's response stated that Baz should "provide [his Redress Control Number] when making reservations" and that, "[w]hen entering the United States from abroad, no additional action is required," but again DHS did not tell him whether he was on the No-Fly List. *Id.* ¶ 78.

In March 2017, Baz traveled from Pakistan to Dubai but was not permitted to board a connecting flight to Orlando. *See id.* ¶ 80. Baz again contacted DHS TRIP, inquiring why he had not been informed earlier that he could not fly into the United States. *Id.* ¶ 81. DHS's response did not provide specific information about Baz's No-Fly List status or answer this question, but instead stated that "DHS has researched and reviewed [his] case" and that "DHS

---

[1] The No-Fly List "identifies individuals who are prohibited from flying to, from, or over U.S. territory," Am. Compl. ¶ 31, and is "a subset of the Watch List," *id.*, which "is the government's master repository of known or suspected terrorists," *id.* ¶ 29.

[2] "The Redress Control Number is the record identifier for people who apply for redress through [DHS TRIP]." *Redress Control Numbers*, Department of Homeland Security, https://www.dhs.gov/redress-control-numbers (last published Nov. 4, 2016).

TRIP can neither confirm nor deny any information about [him] which may be within federal watchlists or reveal any law enforcement sensitive information." *Id.* ¶¶ 82–83.

In June 2017, Baz attempted to challenge his alleged No-Fly List status by filing a petition for review with the U.S. Court of Appeals for the D.C. Circuit. *Id.* ¶ 87. After the government moved to dismiss his petition on the basis of *Ege v. Department of Homeland Security*, 784 F.3d 791, 796–97 (D.C. Cir. 2015) (holding that the Court of Appeals lacks jurisdiction under 49 U.S.C. § 46110 to order a name to be removed from the No-Fly List), Baz withdrew his petition and filed this action in May 2018. *See* Am. Compl. ¶ 92.

Before responding to the Complaint, counsel for Defendants notified Baz for the first time that his U.S. tourist visa had been revoked on August 5, 2015—more than sixth months before he attempted to fly to Detroit in 2016 and more than eighteen months before he attempted to fly to Orlando in 2017. *See id.* ¶ 93.[3] Baz amended his Complaint on August 20, 2018. His principal claim is that his alleged inclusion on the No-Fly List violates the Fifth Amendment; the Administrative Procedure Act, 5 U.S.C. § 706(2)(A)–(C); and the statutes requiring Defendants to establish a redress procedure for individuals who believe they have wrongly been identified as a threat by DHS and its subsidiary offices, 49 U.S.C. §§ 44903(j)(2)(C)(iii)(I), 44903(j)(2)(G)(i), 44926(a). Am. Compl. ¶¶ 98–125. Baz also alleges that Defendants failed to provide him with timely notice of his visa revocation, violating 22 C.F.R. § 41.122(c) and the Fifth Amendment.

---

[3] In July 2017, the government had notified Baz that his, and his wife's and daughter's, visas had previously been revoked, but it was not until after this action was filed that Baz learned that the revocation had occurred nearly two years earlier. Am. Compl. ¶¶ 88, 93.

Am. Compl. ¶¶ 108, 110–25. With respect to all of his claims, Baz seeks only declaratory and injunctive relief. *See id.* at 27–28.[4]

While this action was pending, Baz applied for new U.S. tourist visas for himself and his wife and daughter. *Id.* ¶ 97. On August 28, 2018, the State Department denied those applications, citing section 214(b) of the Immigration and Nationality Act (codified at 8 U.S.C. § 1184(b)). *See* Mot., Ex. D ¶ 5. Baz does not challenge this denial (or the revocation of his visa in 2015), *see, e.g.*, Pl.'s Mem. of Law in Opp'n to Defs.' Mot. to Dismiss Pl.'s Am. Compl., Dkt. 29 ("Opp'n") at 4 ("[T]he doctrine of consular non-reviewability bars judicial review of the State Department's substantive decision to issue or revoke a visa . . . ."), except to the extent that Defendants failed to provide timely notice of that revocation. Am. Compl. ¶¶ 108, 110–25; *see also* Opp'n at 4 ("[T]he doctrine [of consular non-reviewability] . . . does not render non-justiciable Dr. Baz's claims concerning Defendants' distinct failure to provide notice of their revocation decision . . . .").

In September 2018, Defendants filed a Motion to Dismiss, arguing both that Baz lacks Article III standing and that his Complaint fails to state any claim upon which the Court could grant relief. *See generally* Mot.

## II. Legal Standard

It is well established that the "irreducible constitutional minimum of standing contains three elements": (1) injury in fact; (2) causation; and (3) redressability. *Lujan v. Defs. of*

---

[4] Baz asserts these claims against the Department of Homeland Security; Acting Secretary of Homeland Security Kevin McAleenan, in his official capacity; Attorney General William Barr, in his official capacity; the Federal Bureau of Investigation (FBI); Director of the FBI Christopher Wray, in his official capacity; the Terrorist Screening Center (TSC); Director of the TSC Charles H. Kable, IV, in his official capacity; the Transportation Security Administration (TSA); Administrator of the TSA David P. Pekoske, in his official capacity; the Department of State; and Secretary of State Michael R. Pompeo, in his official capacity.

*Wildlife*, 504 U.S. 555, 560 (1992). The injury-in-fact element requires an injury that is "concrete and particularized and actual or imminent, not conjectural or hypothetical." *In re U.S. Office of Pers. Mgmt. Data Sec. Breach Litig.*, 928 F.3d 42, 54 (D.C. Cir. 2019) (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) (internal quotation marks omitted)). Causation requires "that the injury is fairly traceable to the defendant's challenged conduct." *Am. Soc'y for Prevention of Cruelty to Animals v. Feld Entm't, Inc.*, 659 F.3d 13, 19 (citing *Lujan*, 504 U.S. at 560–61). And redressability requires that the injury can be remedied "by a favorable decision." *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015) (quoting *Lujan*, 504 U.S. at 561).

At this stage in the proceedings, where Defendants challenge Baz's standing through a motion to dismiss, *see* Fed. R. Civ. P. 12(b)(1), the Court must, of course, accept the facts alleged in the Complaint as true and draw all reasonable inferences from those facts in Baz's favor. *Humane Soc'y of the U.S. v. Vilsack*, 797 F.3d 4, 8 (D.C. Cir. 2015). But the Court "do[es] not assume the truth of legal conclusions, nor do[es it] accept inferences that are unsupported by the facts set out in the complaint." *Arpaio*, 797 F.3d at 19 (internal quotation marks and citations omitted). Further, "[w]hen considering any chain of allegations for standing purposes, [the Court] may reject as overly speculative those links which are predictions of future events (especially future actions to be taken by third parties)." *Id.* at 21 (citation omitted). And where (as here) Baz seeks only prospective relief, "past injuries alone are insufficient to establish standing." *Dearth v. Holder*, 641 F.3d 499, 501 (D.C. Cir. 2011). Rather, Baz must "establish an ongoing or future injury that is 'certainly impending.'" *Williams v. Lew*, 819 F.3d 466, 472 (D.C. Cir. 2016) (quoting *Arpaio*, 797 F.3d at 19).

Defendants also argue that the Amended Complaint fails to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6); Mot. at 22–24. Again, the Court must accept

5

all facts alleged in the Complaint as true and draw all reasonable inferences from those facts in Baz's favor. *W. Org. of Res. Councils v. Zinke*, 892 F.3d 1234, 1240–41 (D.C. Cir. 2018). But a complaint cannot "tender[] 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Rather, the factual allegations, if accepted as true, must be sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. And when evaluating whether a claim is plausible, the Court need not ignore an "obvious alternative explanation," *id.* at 567, for the alleged injury: "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (internal quotations omitted).

### III. Analysis

#### A. Standing

The Amended Complaint focuses primarily on the fact that Baz cannot board a flight bound for the United States. To support that contention, Baz points to his twice having been denied boarding on such flights. *See* Am. Compl. ¶¶ 70–71; 79–80. And, he alleges, that injury is caused by his alleged placement on the No-Fly List and would be redressed by a court order requiring his removal from the List. Opp'n at 11.

For their part, Defendants rightly concede that Baz has alleged a constitutionally sufficient injury in fact. *See generally* Mot. at 14–20. Baz's inability to fly into the United States is an injury that is "concrete and particularized and actual or imminent, not conjectural or hypothetical." *Data Sec. Breach Litig.*, 928 F.3d at 54; *see, e.g.*, *Ibrahim v. Dep't of Homeland Sec.*, 669 F.3d 983, 992–93 (9th Cir. 2012) (holding that being prevented from traveling into the United States is an Article III injury).

But Baz cannot satisfy Article III's causation and redressability requirements. As a general proposition, when a separate, independent government action causes the same alleged harm as a defendant's challenged action, a plaintiff cannot establish the "necessary causal connection" between the defendant's actions and an alleged injury. *Delta Constr. Co. v. EPA*, 783 F.3d 1291, 1297 (D.C. Cir. 2015) (per curiam); *Crete Carrier Corp. v. EPA*, 363 F.3d 490, 493 (D.C. Cir. 2004); *see also Texas v. EPA*, 726 F.3d 180, 197–99 (D.C. Cir. 2013) (dismissing petitions for lack of standing because challenged regulations did not cause petitioners' claimed injuries; the injuries were caused by statute). For similar reasons, a plaintiff's injury cannot be redressed by a court order when two independent government actions produce the same harm and only one is challenged. *See, e.g.*, *Delta Constr.*, 783 F.3d at 1296 ("[E]ven were we to vacate the EPA standards, the NHTSA standards would still increase the price of vehicles."); *Texas*, 726 F.3d at 198 (vacating an agency's action "would not redress the State petitioners' injury" because of a second, independent source of the harm).

Here, the State Department revoked Baz's tourist visa in 2015 and then denied his visa application in 2018. Baz challenges neither decision. As a result, even if Baz were never on the No-Fly List, he still could not have flown to the United States in 2016 and 2017, and he cannot now travel to the United States. In the parlance of Article III, Baz cannot establish that his alleged placement on the No-Fly List causes him to be unable to fly to the United States because that injury is caused by the fact that he does not have a visa. Similarly, a court order requiring his removal from the No-Fly List would not redress his injury because he still could not fly here.

Baz does not contest that his lack of a U.S. visa prevents him from traveling to the United States. Instead, Baz attempts to draw a causal connection between his injury and his alleged status on the No-Fly List by arguing that the State Department revoked his visa *because of* his

No-Fly List status. Opp'n at 7–9. If pleaded with sufficient particularity, such a claim might be enough to establish standing. *See, e.g.*, *Ibrahim*, 669 F.3d at 988, 992–94 (affirming that plaintiff had standing to challenge her alleged No-Fly List designation where (1) she pleaded with sufficient particularity that she was "on one or more government watchlists"; and (2) the State Department told the plaintiff that her visa was revoked because of potential connections to terrorist activities such "that removal of her name from government watchlists would make a grant of a visa more likely"); *see also* discussion *infra* p. 13 (discussing the "extensive facts" Ibrahim alleged "to support her claim that she was on the No-Fly List"). But the Amended Complaint does not allege that Baz's visa was revoked because he was on the No-Fly List. Instead, the Amended Complaint contains general statements regarding how different government agencies share information, with no allegation attempting to link Baz's alleged No-Fly List status with his visa revocation. *See, e.g.*, Am. Compl. ¶ 31 ("[D]ata from the Watch List flows to at least the . . . the No-Fly List (maintained by TSC) . . . [and the] Consular Lookout and Support System, maintained by the Department of State to identify individuals who may be ineligible for a visa or passport . . . .").

Baz argues that he is injured in another way: he cannot board flights that, while not bound for the United States, do transit through U.S. airspace. Such an injury would likely be sufficient for Article III purposes, *see, e.g.*, *Ibrahim*, 669 F.3d at 993 (finding that being prevented from flying over U.S. airspace is an Article III injury), and again Defendants do not contend otherwise. And this injury would not suffer from the same causation and redressability problems discussed above: because a U.S. visa is not required merely to fly *through* U.S. airspace, Opp'n at 6–7, Baz's lack of a visa could not be an independent cause of that injury.

The problem here is one of pleading. Baz has failed to allege with specificity an "ongoing or future injury that is 'certainly impending.'" *Williams*, 819 F.3d at 472 (quoting *Arpaio*, 797 F.3d at 19). The Amended Complaint contains only the conclusion that Baz "has not been permitted to transit through U.S. airspace since at least February 2016," Am. Compl. ¶ 96, without any factual allegation supporting that conclusion. Baz never alleges that he was prevented from boarding a particular flight that would merely transit the United States; rather, he relies on flights that were destined for the United States. *See id.* ¶ 96.

Even if Baz had adequately alleged that he was prevented *in the past* from boarding flights that merely transit U.S. airspace, those past events would not establish that he is likely to suffer the same injury in the *future*. Nowhere in the Amended Complaint does Baz allege that he plans in the relatively near future to board a flight that would transit U.S. airspace. And even if the Amended Complaint contained a general allegation of this kind, "'some day' intentions—without any description of concrete plans, or indeed even any specification of *when* the some day will be—do not support a finding of the 'actual or imminent' injury that [the Court] requires." *Lujan*, 504 U.S. at 564; *see also Williams*, 819 F.3d at 472 ("[A plaintiff] . . . must rely on concrete and particular current or future injuries-in-fact to establish standing.").[5]

Turning to non-travel injuries, Baz argues that he has suffered harm to his reputation as a result of being on the No-Fly List. In particular, Baz alleges that the "prominent 'revoked' stamp" on the pages of his passport containing his U.S. visa pages has caused him a "great

---

[5] For the first time in his opposition brief, Baz asserts that he is prevented "from boarding any U.S. commercial carrier, whether or not the flight departs from or lands in the United States." Opp'n at 6–7. This injury is not alleged in the Amended Complaint at all. Baz does not allege any instance in which he attempted to board a flight on a U.S. carrier that did not land in the United States, and in any event, Baz does not allege an "ongoing" or "certainly impending" harm stemming from being unable to board a U.S. carrier.

stigma" that "resulted in additional unwarranted security screenings[] and led to considerable delay in subsequent trips abroad." Am. Compl. ¶ 90. He also alleges that "his revoked U.S. visa . . . provoked the suspicion of airport personnel" on a trip to Mexico and that, on that same trip, he was "embarrassed and stigmatized" when he was denied entry to Costa Rica. *Id.* ¶ 91. And he asserts that he "suffered personal and professional embarrassment when he was twice barred from boarding flights into the United States." *Id.* ¶ 95.

But the State Department's 2015 revocation of Baz's visa is again a separate, independent cause of his reputational injuries. Indeed, the Amended Complaint itself ties those injuries *directly* to his visa revocation. *See, e.g.*, *id.* ¶ 90 ("The [*visa revocation*] *stamp* has *caused* Dr. Baz great stigma, resulted in additional unwarranted security screenings, and led to considerable delay in subsequent trips abroad." (emphasis added)); *id.* ¶ 91 ("*Because of* his *revoked U.S. visa*, Dr. Baz provoked the suspicion of airport personnel . . . ." (emphasis added)). Baz cannot establish the "necessary causal connection" between the action he challenges (his alleged placement on the No-Fly List) and his reputational injuries when his own Amended Complaint ties those injuries directly to his visa revocation. *See Delta Constr.*, 783 F.3d at 1297.

Moreover, while the Amended Complaint seeks only prospective relief, Am. Compl. at 27–28, Baz does not allege he is likely to suffer reputational injury in the future. *See, e.g.*, *id.* ¶¶ 90–91, 95. Rather, the Amended Complaint points only to past incidents when discussing Baz's reputational injuries, and "past injuries alone are insufficient to establish standing" for prospective relief, *see Dearth*, 641 F.3d at 501. Further, any future reputational harm from the

10

revocation stamp on his passport would not be redressed by an order requiring his removal from the No-Fly List because Baz does not challenge the revocation itself.[6]

Finally, Baz claims that he suffered a procedural injury when the State Department failed to provide him timely notice that it had revoked his U.S. visa in 2015. Opp'n at 4–5 ("Defendants denied Dr. Baz timely notice of his visa revocation for nearly two years, despite having a reasonable means to contact Dr. Baz during that time." (citing Am. Compl. ¶¶ 7, 9, 13, 88, 106, 109)). It is well established, however, that "the omission of a procedural requirement does not, by itself, give a party standing to sue." *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 921 (D.C. Cir. 2015) (quoting *Ctr. for Biological Diversity v. U.S. Dep't of Interior*, 563 F.3d 466, 479 (D.C. Cir. 2009)). Rather, "[d]eprivation of a procedural right without some concrete interest that is affected by the deprivation—a procedural right *in vacuo*—is insufficient to create Article III standing." *Id.* (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009)).

For the reasons discussed above, Baz has failed to allege "that [he] will likely suffer a substantive injury"; thus, his "claimed procedural injury . . . necessarily fails." *Sierra Club v.*

---

[6] Any reputational injury that Baz alleges he suffered when he was denied to entry to Costa Rica also suffers from the fact that his asserted causal chain brings a third party into its links. "Although 'standing is not precluded' in a case that turns on third-party conduct, 'it is ordinarily substantially more difficult to establish,'" *Arpaio*, 797 F.3d at 20 (quoting *Lujan*, 504 U.S. at 562), and thus a plaintiff must proffer "*substantial evidence* of a causal relationship between the [challenged harm] and the third-party conduct, leaving little doubt as to causation and the likelihood of redress." *Id.* (emphasis added) (quoting *Nat'l Wrestling Coaches Ass'n v. Dep't of Educ.*, 366 F.3d 930, 941 (D.C. Cir. 2004)). Here, Baz fails to allege any connection—much less *substantial evidence* of a connection—between Defendants' alleged placement of him on the No-Fly List and the Costa Rican government. While Baz alleges that Defendants share No-Fly List information "with foreign governments," *see* Am. Compl. ¶ 31, he fails to assert that Defendants shared any information with Costa Rica, *see id.* ¶¶ 31, 91. Instead, he rests on an unsupported inference that he was denied entry into Costa Rica because of his alleged No-Fly List designation. Opp'n at 9 (citing Am. Compl. ¶ 91). That unsupported inference is not enough to establish a causal relationship between Defendants and a third party.

11

*EPA*, 754 F.3d 995, 1002 (D.C. Cir. 2014). Moreover, the State Department's failure to provide him with notice of his visa revocation is neither "ongoing" nor "certainly impending." Not surprisingly, Baz does not allege that the State Department is likely to fail to again provide him with timely notice of its revocation of his visa because Baz does not presently have a visa to revoke. And his most recent interaction with the State Department cuts the other way: after applying for a new visa to the United States, the Consulate in Pakistan promptly notified Baz and his family that their visas were denied. *See* Mot., Ex. D ¶ 5.

### B.  Failure to State a Claim

Even if Baz had adequately pleaded Article III standing, dismissal of his claims challenging his alleged No-Fly List status would still be warranted because he fails to plausibly allege he is on the No-Fly List.

As noted above, the government has never told Baz whether he is on the No-Fly List, nor does Baz allege that he otherwise knows he is on that list. Instead, Baz infers that conclusion from his two prior attempts to board flights bound for the United States. *See, e.g.*, Am. Compl. ¶ 68 (alleging that "he was prevented from boarding flights into the United States . . . *apparently* due to his unjustified inclusion on the No-Fly List" (emphasis added)); *id.* ¶ 80 (alleging that after being denied boarding a plane destined for Orlando and receiving a Redress Control Number from DHS, "Baz *could only conclude* that he remained on the No-Fly List" because "no U.S. government official had so informed him" (emphasis added)). As discussed above, however, both of those events are explained by Baz's lack of U.S. visa. His visa revocation is thus an "obvious alternative explanation" for his past treatment, and his inference that he is on the No-Fly List "stops short of the line" that would make it plausible, *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Put differently, where Baz's past treatment is wholly

12

explained by his lack of a U.S. visa, the Court cannot draw the inference that Defendants have placed Baz on the No-Fly List.[7]

*Ibrahim* is therefore inapposite. There, the plaintiff alleged extensive facts to support her claim that she was on the No-Fly List prior to the revocation of her visa, including being (1) detained and searched at a U.S. airport, where she was told that she was on the No-Fly List; (2) subjected to enhanced searches at every stopover, including outside the United States; and (3) prevented from boarding a flight to the United States from Malaysia, when she was told that "there was a note by her name instructing airport personnel to call the police and have her detained." *Ibrahim v. Dep't of Homeland Sec.*, No. C 06-00545, 2009 WL 2246194, at *3, *6 (N.D. Cal. July 27, 2009). Baz fails to allege any similar facts.

## IV. Conclusion

Because Baz has not adequately alleged Article III standing, Defendants' Motion to Dismiss is **GRANTED**, and the Amended Complaint is dismissed without prejudice. An Order will be entered contemporaneously with this Memorandum Opinion.

DATE: October 11, 2019

CARL J. NICHOLS
United States District Judge

---

[7] Several of the incidents described by Baz are more consistent with his not having a valid U.S. visa than his having been on the No-Fly List. For example, while attempting to fly to Detroit from Toronto in 2016, Baz was advised by the U.S. Consulate in Toronto to contact the U.S. Consulate in Pakistan (which had issued Baz's U.S. visa), suggesting that Baz's problems stemmed from a lack of U.S. visa. Similarly, the State Department stated that it denied Baz's 2018 visa application under section 214(b) of the Immigration and Nationality Act—a provision unrelated to suspected links to terrorism. *See* Mot., Ex. D ¶ 5.